**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAYER ROSEN EQUITIES LLC AND R.G. FAMILY SECURITY LLC, <br><br>               Plaintiffs, <br><br>      v. <br><br> THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br><br>               Defendant and Third-Party Plaintiff <br><br>      v. <br><br> ALEXANDER ASHKENAZI, AS TRUSTEE OF THE REISL GOLDBERGER INSURANCE TRUST <br><br>               Third-Party Defendant. | Case No.: 14-cv-10087 |

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY'S**
**INTERPLEADER COMPLAINT**

Defendant and Third-Party Plaintiff The Lincoln National Life Insurance Company ("Lincoln"), by and through its attorneys Saul Ewing LLP, for its Interpleader Complaint against Alexander Ashkenazi, as Trustee of the Reisl Goldberger Insurance Trust ("Mr. Ashkenazi"), states as follows:

**THE NATURE OF THE ACTION**

1.          Lincoln brings this Third-Party Interpleader Complaint to resolve competing claims that Lincoln has received to the death benefit proceeds of a Flexible Premium Adjustable Life Insurance Certificate, bearing the Certificate Number ML5583743 (the "Certificate"), which Lincoln issued on the life of Reisl Goldberger (the "Insured"). Upon information and belief, the

insured passed away on October 14, 2014.  Subsequent to the death of the Insured, Lincoln received competing claims to the Certificate's death benefit based upon a dispute as to the proper owner of the Certificate.

2.     Plaintiffs Mayer Rosen Equities LLC ("Mayer Rosen") and R.G. Family Security LLC ("Family Security") have each alleged that they are entitled to portions of the Certificate's death benefit and have filed claim documents with Lincoln.  Mr. Ashkenazi maintains that he, and not Mayer Rosen or Family Security, is entitled to the Certificate's death benefit, and has also filed claim documents with Lincoln.   As a neutral stakeholder, Lincoln seeks to join the disputing claimants to this action, pay the full amount of the Certificate's death benefit, plus claim interest (if any) to the Clerk of the Court, and to be discharged from any further liability as to the Certificate.

### THE PARTIES

3.     The Lincoln National Life Insurance Company is a corporation duly organized and existing under the laws of the State of Indiana, with a principal place of business in Pennsylvania.  For purposes of jurisdiction, Lincoln is thus considered a citizen of Indiana and Pennsylvania.

4.     Upon information and belief, Mr. Ashkenazi resides at 1426 57th Street, Brooklyn, New York, 11219 and for purposes of jurisdiction, is a citizen of New York.

### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1332, because Lincoln is a citizen of Indiana and Pennsylvania, Mr. Ashkenazi is a citizen of New York, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

2

6.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1397 because a substantial part of the events giving rise to the claims asserted in this Complaint occurred in this District and because one or more of the claimants reside in this District.

## FACTUAL BACKGROUND

7.      The Reisl Goldberger Insurance Trust, dated May 29, 2007 (the "Trust"), submitted an Application for Group Life Insurance to Lincoln, dated May 31, 2007 (the "Application").  The Application was signed on behalf of the Trust by Mr. Herman Goldberger, as Trustee.

8.      On September 26, 2007, Lincoln received all the information necessary (including the initial premium payment) to place the Certificate in force.  At that time, Lincoln issued the Certificate on the life of the Insured with a death benefit face amount of $13,000,000.00. Lincoln also issued an Endorsement to the Certificate, noting that the Certificate's "Certificate Date" was changed from August 28, 2007 to September 26, 2007 to reflect Lincoln's receipt of the requirements to place the Certificate in force on September 26, 2007.

9.      Lincoln subsequently received a "Notice of Appointment of Successor Trustee," dated July 17, 2011 (the "Trustee Resignation").  *A copy of the Trustee Resignation is attached as Exhibit A*.  The Trustee Resignation represents that Mr. Herman Goldberger resigned as Trustee of the Trust on July 17, 2011 and appointed Mr. Yehudis Minster as Successor Trustee. At the time, Lincoln had no indication that the Trustee Resignation may be improper.

10.     Lincoln subsequently received a Life Ownership Change Form, dated December 7, 2012 and executed by Yehudis Minster on behalf of the Trust (the "2012 Ownership Change

Form"). The 2012 Ownership Change Form purported to transfer the ownership of the Certificate from the Trust to a separate entity, LXNBRG GN Fund II, LLC ("LXNBRG").

11.     Following that purported Ownership transfer, Lincoln states that it received another Ownership Change for Life Policy form, dated December 5, 2013 (the "2013 Ownership Change Form") which purported to transfer ownership of the Certificate from LXNBRG to Mayer Rosen Equities, LLC ("Mayer Rosen").

12.     Lincoln also received a Beneficiary Change for Life Policy form, dated April 25, 2014 by a member of Mayer Rosen (the "April 25 Beneficiary Change Form") as purported owner of the Certificate.   The April 25 Beneficiary Change Form purports to provide a beneficiary interests in the Certificate's death benefit to Mayer Rosen and R.G. Family Security, LLC ("Family Security").

13.     Upon information and belief, on October 14, 2014, the Insured passed away. Lincoln subsequently received competing claims to the Certificate's death benefit.

14.     Lincoln received a Claimant's Statement form from Mayer Rosen, dated October 14, 2014 (the "Mayer Rosen Claim Form") and a Claimant's Statement form from R.G. Family Security, LLC ("Family Security"), also dated October 14, 2014 (the "Family Security Claim Form"). Both the Mayer Rosen Claim Form and the Family Security Claim Form seek payment of portions of the Certificate's death benefit. *A copy of the Mayer Rosen Claim Form is attached hereto as **Exhibit B**. A copy of the Family Security claim form is attached hereto as **Exhibit C**.*

15.     However, Lincoln also received a letter, dated October 16, 2014 (the "October 16, 2014 Letter"), from counsel to Mr. Alexander Ashkenazi ("Mr. Ashkenazi"). In the October 16, 2014 Letter, Mr. Ashkenazi's counsel stated that there was "reason to believe that a claim to

ownership of this Policy [i.e., the Certificate] may be asserted by a party who is not the lawful owner of the Policy."

16.     Mr. Ashkenazi subsequently filed a Claimant's Statement, dated November 17, 2014 (the "Ashkenazi Claim Form"), seeking payment of the Certificate's death benefit.  *A copy of the Ashkenazi Claim Form is attached hereto as Exhibit D.*

17.     Mr. Ashkenazi also provided Lincoln with a copy of an amended "Reisl Goldberger Insurance Trust," dated September 25, 2007 (the "Amended Trust").  The Amended Trust names Mr. Ashkenazi as the Trustee and Mr. Herman Goldberger as the Trust's "Beneficiary."  *A copy of the Amended Trust is attached hereto as Exhibit E.*  Mr. Ashkenazi's counsel further represented, in a letter dated October 30, 2014 Letter (the "October 30, 2014 Letter"), that "Mr. Ashkenazi did not authorize the appointment of Mr. Minster as a substitute trustee and did not authorize any change of ownership of the policy."  *A copy of the October 30, 2014 letter is attached hereto as Exhibit F.*

18.     Lincoln is therefore faced with competing adverse claims to the death benefit proceeds under the Certificate.  The claims advanced by the Mayer Rosen and Family Security depend upon the authority of Mr. Yehudis Minster to transfer ownership of the Certificate from the Trust to LXNBRG by means of the 2012 Ownership Change Form.  The claims advanced by Mr. Ashkenazi likewise depend on Mr. Minster not having that authority.  Faced with these competing claims, Lincoln cannot determine to whom it should pay the death benefit payable under the Certificate.

19.     Lincoln makes no claim of entitlement to the death benefit and is merely a stakeholder.  However, because of the dispute between Mayer Rosen/Family Security and Mr. Ashkenazi, Lincoln is unable to make payment to any of the claimants without exposing itself to

potential multiple liability for the same death benefit.  Thus, Lincoln has refrained from paying

any part of the death benefit to any of the claimants.

## FIRST CAUSE OF ACTION
## FOR INTERPLEADER

20.     Lincoln repeats and re-alleges the allegations set forth in paragraphs 1 through 19,

as if fully set forth herein.

21.     Lincoln is ready, willing and able to pay the death benefit due under the

Certificate, and claims no beneficial interests in the death benefit.  Rather, Lincoln is a mere

stakeholder.

22.     Lincoln remains unable to determine the validity of the conflicting and adverse

demands by Mayer Rosen/Family Security and Mr. Ashkenazi.

23.     Lincoln cannot pay any part of the death benefit due under the Certificate to any

of the claimants without the danger of being compelled to pay said sum or a portion thereof to

each claimant, and thus expose itself to multiple liability for the same death benefit.

24.     Lincoln respectfully requests permission pursuant to Fed. R. Civ. P. 67(a) to

deposit with the Clerk of the Court in an interest-bearing account the unpaid death benefit due

under the Certificate, in the amount of $13 million, plus accrued claim interest (if any).

25.     Lincoln is entitled to join Mr. Ashkenazi, in his alleged capacity as trustee of the

Amended Trust to this action.  Further, Plaintiffs and Mr. Ashkenazi are required to interplead

and settle between themselves their respective rights to the Certificate's death benefit.

26.     Lincoln is further entitled to the equitable remedy of interpleader; to be

discharged from any and all further liability under the Certificate and; to injunctive relief against

each of the claimants to the Certificate's death benefit.

## SECOND CAUSE OF ACTION
## FOR ATTORNEY'S FEES

27.     Lincoln repeats and re-alleges the allegations set forth in paragraphs 1 through 27, as if fully set forth herein.

28.     Lincoln does not claim any interest in any part of the death benefit payable under the Certificate.  Rather, Lincoln brings this Third-Party Complaint to interplead all claimants to the Certificate's death benefit to this action in order to avoid multiple liability as a result of the claimant's conflicting and adverse claims.  Lincoln brings this action in good faith.

29.     Lincoln is entitled to an amount equal to the attorneys' and other fees and expenses incurred in preparing, filing and litigating this action.

30.     Lincoln requests that the payment of those fees and costs be taken from the death benefit payable under the Certificate, or from such other source(s) as the Court deems proper.

WHEREFORE, Lincoln demands judgment as follows:

a)     Dismissing Lincoln from this action following joinder of all claimants to the Certificate's death benefit;

b)     That Lincoln be permitted to pay over to the Clerk of the Court the unpaid death benefit in the amount of $13 million, plus accrued claim interest (if any);

c)     That Mayer Rosen, Family Security and Mr. Ashkenazi be required to interplead and settle between themselves their respective rights to the sum deposited with the Court;

d)     That Mayer Rosen, Family Security and Mr. Ashkenazi be restrained and enjoined from instituting, prosecuting or maintaining, directly or indirectly, any claim or action of any type or kind against Lincoln arising from or in any manner relating to the Certificate, the death benefit payable under the Certificate, and/or their respective claims for payment of some or all of the death benefit.

7

e)     Discharging Lincoln from any and all further liability under the Certificate;

f)     That Lincoln be awarded its reasonable attorneys' fees and expenses for litigating

this action; and

g)     For such other and further relief as the Court deems just and proper.

Dated: Newark, New Jersey
       February 25, 2015

**SAUL EWING LLP**

By:  /s/ Edward F. Roslak_____
     Edward F. Roslak
     One Riverfront Plaza, Suite 1520
     Newark, New Jersey  07102
     Tel: (973) 286-6700
     Fax: (973) 286-6820
     eroslak@saul.com

     *Attorneys for The Lincoln National Life*
     *Insurance Company*

# EXHIBIT A

## NOTICE OF APPOINTMENT OF SUCCESSOR TRUSTEE

Pursuant to the terms of paragraph (A) of Article Thirteenth of the Reisl Goldberger Insurance Trust, u/a/d – 5/29/2007 (the "Trust"), Herman Goldberger, the current and resigning trustee (the "Resigning Trustee"), being a trustee under the terms of the Trust, hereby immediately resigns as of July 17, 2011. Contemporaneous herewith, the Resigning Trustee irrevocably appoints Yehudis Minster as the successor trustee (the "Successor Trustee") to the Trust. The Successor Trustee shall have all the powers enumerated in the Trust. By execution of this document, Yehudis Minster accepts his appointment as Successor Trustee. This appointment shall take effect immediately upon the execution of this Notice of Appointment of Successor Trustee.

Dated: July 17, 2011

TRUSTEE:

Herman Goldberger

SUCCESSOR TRUSTEE:

Yehudis Minster

ML5583743

# EXHIBIT B

 Lincoln
Financial Group®

Claim Dept. - 5310
P.O. Box 21008
Greensboro, NC 27420-1008
Phone: 800-487-1485

Overnight Address:
Lincoln Financial Group
Claim Dept. - 5310
100 North Greene Street
Greensboro, NC 27401

Policy Number: ML5583743

## CLAIMANT'S STATEMENT

**INSTRUCTIONS – Important Information – please read carefully and completely**

Life Death Claim Items that are <u>always required</u>:

- Certified death certificate showing the manner of death
- Claimant's Statement completed and signed by each beneficiary. Each beneficiary must have a separate Claimant's Statement.

Additional documentation and instructions may be required when the beneficiary is a(n):

- Estate
- Trust
- Guardian (minors and incompetent beneficiaries)
- Corporation
- Partnership
- Assignment to third parties

Please refer to the Distinctive Payee Arrangements form (number CL05984) for full instructions

**Power of Attorney:** If an attorney-in-fact under a Power of Attorney is completing the Claimant's Statement on behalf of the claimant, a copy of the Power of Attorney document must be provided. If the Power of Attorney document was executed more than three years ago, additional information from the attorney-in-fact may be required. The Social Security number of the person who granted the Power of Attorney must be used. The attorney-in-fact's Social Security number may not be used.

**Other Possible Requirements (please note that failure to include this information where applicable may cause delay in processing the claim.):**

- **Deceased Beneficiary** – if any named beneficiary of the contract is deceased, a copy of the death certificate of such deceased beneficiary must accompany this form.
- **Foreign Death** - if death of the insured occurred outside of the United States, we will require a Report of the Death of an American Citizen Abroad and a Foreign Death Questionnaire. A Translated Certified Copy of the Death Certificate may also be required.
- **Consent to transfer or a state tax waiver** – A form for consent or notice is required in some states. When consent is required, the state must give approval before the death benefit can be paid. If this form is required, it will be provided to the beneficiary by us.

Lincoln Financial Group (Lincoln) does not require that the policy(ies) be returned to Lincoln for filing of a claim. However, Lincoln does ask that the relevant policy(ies) be destroyed once payment is received.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
CL05983_1-13

Page 1 of 6
1/13

Policy Number: ML5583743

**DECEASED'S INFORMATION**

If the deceased was known by any other names, such as maiden name, hyphenated name, nickname, derivative form of the first and/or middle name, please include them below:

Name: Reisl Goldberger

Address: 90 Ross Street

City, State, Zip: Brooklyn NY 11211

Date of Birth /30 REDACTED            Date of Death: 10/14/2014

Social Security No. REDACTED 7610

Citizenship: Was deceased a U.S. Citizen? ■ Yes   ☐ No

If "No", please list country of citizenship. _____

Cause of Death: Natrual Causes (Cancer)

If the policy (ies) contains an Accidental Death Benefit are you claiming it?   ☐ Yes   ☐ No

* Furnish all detailed newspaper clippings, policy reports and coroner's report. Lincoln may require additional information, depending on the circumstances of the death.

**CLAIMANT INFORMATION:**

Name: Mayer Rosen Equities LLC

Address: 1274 49 street

City, State, Zip: Brooklyn NY 11219

Social Security or Tax ID Num REDACTED 133            Date of Birth: n/a

Daytime Telephone No: 7187819483 REDACTED            Evening Telephone No: _____

Email Address (optional): _____

Claimant's relationship to Decedent: I am filing this claim as:

    ☐ An individual who is a named beneficiary under the policy

    ☐ A Trustee of a Trust which is a named beneficiary under the policy

    ☐ An Executor of an Estate which is a named beneficiary under the policy

    ■ Other  Corporation that is named Benificiary  , Manager

Citizenship: Are you a U.S. Citizen? ■ Yes   ☐ No

If No, please indicate country of Residence: _____ and Citizenship: _____

If you are a resident of a foreign country, a W-8BEN or a W-9 must be completed.

This form can be found at: http://www.irs.gov/pub/irs-pdf/fw9.pdf or http://www.jrs.gov/pub/irs-pdf/fw8ben.pdf

If you would like us to mail your proceeds to an address other than the above, please specify:

Name: _____

Address: _____

City, State, Zip: _____

You can help expedite the payment of your claim by completing all of the information on this page.

CL05983_1-13

Policy Number: ML5583743

For your convenience and assistance when your claim is approved, pages 3 through 6 offer you the ability to receive your death benefits or place your funds into one of the other settlement options. Please read your options carefully and know that Lincoln is available to address any questions that you may have. The options are numbered for your convenience.

**PAYMENT OPTIONS:**
Please select one of the following options. Please Note: If the owner of the Contract/Certificate has previously designated a payment option, Lincoln is required to disburse funds pursuant to that designation.

1.  ☐ LUMP SUM – Three options are provided

   If you select this option, you may select a single check, EFT or Wire. If you do not select a payment option the default method of payment will be a single check.

   ☐ One Single Check

   ☐ Electronic Funds Transfer (for EFT please complete the fields below)

   **Distributions through EFT will be deposited directly into your account at your financial institution.**

   ■ Wire Deposit** (A fee of $25 will be assessed, except for Custodial Accounts. Fees are subject to change.)

   Complete the information on where payments should be deposited:

   Financial Institution's Name:  Capital One Bank

   Telephone Number: 347-464-5101

   Address: 4612 13 avenue

   City, State, Zip: Brooklyn NY 11219

   Type of Account: ■ Checking (must attach a "voided" check)

   ☐ Savings (must attach Savings account statement with routing number, account number and accountholder name)

   ABA/Transit Routing Number (Contact your Financial Institution for this.): 021407912

   Account Number: 7527659358

**Note: If requesting a wire, you must indicate the financial institution's address above.

Your signature on page 5 of this form serves as authorization to deposit payments and initiate corrections, if necessary, to the financial institution named above. The institution must be a member of the National Automated Clearing House Association (NACHA). You also agree to hold Lincoln harmless for the date funds are credited by the institution to your account. This authorization will remain in effect until your funds are depleted or you notify Lincoln of a change in sufficient time to act.

Policy Number: ML5583743

2. ☐ SecureLine® Interest-Bearing Checking Account (Only available for payments $50,000 or greater)

SecureLine® is a service offered to help you manage insurance and annuity proceeds. With SecureLine®, an account is established from the proceeds payable on a policy administered by a Lincoln company. Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine® account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money.

- Interest Rates – Your SecureLine® account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. Lincoln may increase that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will be credited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the same day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine® account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

- Protection Of Deposits – Your money in your SecureLine® account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group company that established your account. Because the funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.

- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.

- Time To Decide – As long as you have money in the SecureLine® account, your right to other available settlement options is preserved until the entire balance is withdrawn or the balance drops below $1,000. You may choose to withdraw the balance of your account and place it in a settlement option offered by Lincoln. Please see Page 10 for an explanation of the available settlement options.

- Fees or Administrative Charges – There are no fees for checks and no fees for monthly checking account services. You will be charged a fee of $15 if you stop a payment and $10 if you present a check without sufficient funds. Your checkbook will be enclosed with your account opening packet. You may order additional checks at no cost. Just contact a Northern Trust Customer Service Representative at 1-800-343-2551.

- Minimum Balance – Your SecureLine® account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.

CL05983_1-13

Policy Number: ML5583743

3.   ☐ SETTLEMENT OPTION

    If you would like additional information regarding settlement options, please call Lincoln at 1-800-487-1485 extension 8529. After you have carefully reviewed the options, please indicate your selection by name on the line below.

    The interest rate will be the greater of the rate stated in the policy or Lincoln's declared rate.

    I select the following Settlement Option: _____

    EXPLANATION OF SETTLEMENT OPTIONS

    ☐ **Life Only** – Proceeds plus interest are paid in installments as long as you are living. Payments cease at your death.

    ☐ **Life With Ten Years Guaranteed** – Proceeds plus interest are paid in installments as long as you are living. If you die within ten years after payments start, we will continue payments to your beneficiary for the balance of the ten year period.

    ☐ **Refund Annuity** - Proceeds plus interest are paid in installments as long as you are living. If you die before receiving payments equaling the original amount of the contract, we will continue payments to your beneficiary until the total payments to you and your beneficiary equals the original amount of the contract.

    ☐ **Period Certain** – Proceeds plus interest are paid in equal installments for any number of years you select from one to thirty.

    ☐ **Amount Certain** – Payments are made in equal installments of an amount you select until the proceeds plus interest are exhausted.

    1. The frequency of payments: ☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐   Annual

    2. The method of payment:   ☐ Check   ☐ Electronic Fund Transfer (EFT)

**CONSENT:** I authorize any doctor, hospital or other medical or medically related facility, insurance company, consumer reporting agency, employer, the Social Security Administration, the Internal Revenue Service or any other organization or person having any knowledge of the deceased (named below) and his/her earnings or health to give Lincoln Financial Group®, its subsidiaries or authorized representative any information needed to determine policy claim benefits. This may include (but is not limited to) information regarding: medical treatment/history, prescriptions, HIV antibody testing, Acquired Immune Deficiency Syndrome or related complexes, driving records, earnings information, tax returns, mental illness and use of alcohol or drugs. A photocopy of this form is as valid as the original and I may request one. This form will be in force for one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Lincoln Financial Group® at the address indicated above.

_____
Name of Deceased

**SIGNATURE:**

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

You understand that by furnishing a claim form, the "Company" does not acknowledge that there is any insurance in force or that you are the designated beneficiary. If necessary, the "Company" may ask for more information to confirm this claim.

By signing below, I certify that the information provided is complete and accurate as shown.

**Fraud Warning for New York Residents:**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Mayer Rosen Equities LLC , Mayer Rosen - Managing Member
_____
Claimant's Full Legal Name (Please Type or Print)

_____    10|14|2014
Claimant's Signature                                        Date

Policy Number: __ML5583743__

## FRAUD WARNINGS

**Warning** – Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files a statement of claim containing any false, incomplete or misleading information or conceals, for the purpose of misleading, information concerning any fact material to the claim, commits a fraudulent insurance act, which may be a crime, and in certain states a felony. Penalties may include imprisonment, fines, denial of insurance and civil damages.

These states require the following fraud warnings:

**California** (For your protection, California law requires this to appear.) – Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado** – It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**District of Columbia: WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

**Kentucky** – Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Minnesota** – A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire** – Any person who, with a purpose to injure, defrauds or deceives any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in **N.H. Rev. Stat. Ann. Subsection 638:20.**

**New Jersey** – Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties.

**Pennsylvania** – Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico** – Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand ($5,000) dollars and not more than ten thousand ($10,000) dollars, or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

# EXHIBIT C



| | Claim Dept. - 5310 | Overnight Address: |
|---|---|---|
| | P.O. Box 21008 | Lincoln Financial Group |
| | Greensboro, NC 27420-1008 | Claim Dept. - 5310 |
| | Phone: 800-487-1485 | 100 North Greene Street |
| | | Greensboro, NC 27401 |

Policy Number: ML5563743

## CLAIMANT'S STATEMENT

### INSTRUCTIONS – Important Information – please read carefully and completely

Life Death Claim Items that are always required:

- Certified death certificate showing the manner of death
- Claimant's Statement completed and signed by each beneficiary. Each beneficiary must have a separate Claimant's Statement.

Additional documentation and instructions may be required when the beneficiary is a(n):

- Estate
- Trust
- Guardian (minors and incompetent beneficiaries)
- Corporation
- Partnership
- Assignment to third parties

Please refer to the Distinctive Payee Arrangements form (number CL05984) for full instructions

**Power of Attorney:** If an attorney-in-fact under a Power of Attorney is completing the Claimant's Statement on behalf of the claimant, a copy of the Power of Attorney document must be provided. If the Power of Attorney document was executed more than three years ago, additional information from the attorney-in-fact may be required. The Social Security number of the person who granted the Power of Attorney must be used. The attorney-in-fact's Social Security number may not be used.

**Other Possible Requirements** (please note that failure to include this information where applicable may cause delay in processing the claim.):

- **Deceased Beneficiary** – if any named beneficiary of the contract is deceased, a copy of the death certificate of such deceased beneficiary must accompany this form.
- **Foreign Death** – if death of the insured occurred outside of the United States, we will require a Report of the Death of an American Citizen Abroad and a Foreign Death Questionnaire. A Translated Certified Copy of the Death Certificate may also be required.
- **Consent to transfer or a state tax waiver** – A form for consent or notice is required in some states. When consent is required, the state must give approval before the death benefit can be paid. If this form is required, it will be provided to the beneficiary by us.

Lincoln Financial Group (Lincoln) does not require that the policy(ies) be returned to Lincoln for filing of a claim. However, Lincoln does ask that the relevant policy(ies) be destroyed once payment is received.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
CL05983_1-13

Page 1 of 6
1/13

Policy Number: ML5583743

**DECEASED'S INFORMATION**

If the deceased was known by any other names, such as maiden name, hyphenated name, nickname, derivative form of the first and/or middle name, please include them below:

Name: Reisl Goldberger

Address: 90 Ross Street

City, State, Zip: Brooklyn NY 11211

Date of Birth: /30                              Date of Death: 10/14/2014

Social Security Number: 7610

Citizenship: Was deceased a U.S. Citizen?   ■ Yes   ☐ No

If "No", please list country of citizenship.

Cause of Death: Natrual Causes (Cancer)

If the policy (ies) contains an Accidental Death Benefit are you claiming it?   ☐ Yes   ☐ No

\* Furnish all detailed newspaper clippings, policy reports and coroner's report. Lincoln may require additional information, depending on the circumstances of the death.

**CLAIMANT INFORMATION:**

Name: R.G. Family Security, LLC

Address: 128 Cedurhurst Ave

City, State, Zip: Cedurhurst

Social Security or Tax ID Number: 535                    Date of Birth: n/a

Daytime Telephone No: 917 670 9016                        Evening Telephone No:

Email Address (optional):

Claimant's relationship to Decedent: I am filing this claim as:

    ☐   An individual who is a named beneficiary under the policy

    ☐   A Trustee of a Trust which is a named beneficiary under the policy

    ☐   An Executor of an Estate which is a named beneficiary under the policy

    ■   Other  Corporation that is named Benificiary , *Manager*

Citizenship: Are you a U.S. Citizen?   ■ Yes   ☐ No

If No, please indicate country of Residence: _____ and Citizenship: _____

If you are a resident of a foreign country, a W-8BEN or a W-9 must be completed.

This form can be found at: http://www.irs.gov/pub/irs-pdf/fw9.pdf or http://www.irs.gov/pub/irs-pdf/fw8ben.pdf

If you would like us to mail your proceeds to an address other than the above, please specify:

Name:

Address:

City, State, Zip:

**You can help expedite the payment of your claim by completing all of the information on this page.**

CL05983_1-13

Policy Number: ML5583743

For your convenience and assistance when your claim is approved, pages 3 through 6 offer you the ability to receive your death benefits or place your funds into one of the other settlement options. Please read your options carefully and know that Lincoln is available to address any questions that you may have. The options are numbered for your convenience.

**PAYMENT OPTIONS:**
Please select one of the following options. Please Note: If the owner of the Contract/Certificate has previously designated a payment option, Lincoln is required to disburse funds pursuant to that designation.

I.   ☐ **LUMP SUM – Three options are provided**

If you select this option, you may select a single check, EFT or Wire. If you do not select a payment option the default method of payment will be a single check.

☐ **One Single Check**

☐ **Electronic Funds Transfer (for EFT please complete the fields below)**

Distributions through EFT will be deposited directly into your account at your financial institution.

■ **Wire Deposit** (A fee of $25 will be assessed, except for Custodial Accounts. Fees are subject to change.)

Complete the information on where payments should be deposited:

Financial Institution's Name: JP Morgan Chase Bank

Telephone Number: 718 637 6255

Address: 210 Wallabout St

City, State, Zip: Brooklyn NY 11206

Type of Account: ■ Checking (must attach a "voided" check)

☐ Savings (must attach Savings account statement with routing number, account number and accountholder name)

ABA/Transit Routing Number (Contact your Financial Institution for this.): 021000021

Account Number: 652972626

**Note: If requesting a wire, you must indicate the financial institution's address above.

Your signature on page 5 of this form serves as authorization to deposit payments and initiate corrections, if necessary, to the financial institution named above. The institution must be a member of the National Automated Clearing House Association (NACHA). You also agree to hold Lincoln harmless for the date funds are credited by the institution to your account. This authorization will remain in effect until your funds are depleted or you notify Lincoln of a change in sufficient time to act.



Policy Number:  ML5583743

2.     ☐ SecureLine® Interest-Bearing Checking Account (Only available for payments $50,000 or greater)

SecureLine® is a service offered to help you manage insurance and annuity proceeds. With SecureLine®, an account is established from the proceeds payable on a policy administered by a Lincoln company. Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine® account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance. Otherwise you can use this account for paying expenses as they occur – while earning interest on your money.

- Interest Rates – Your SecureLine® account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. Lincoln may increase that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will be credited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the same day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine® account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

- Protection Of Deposits – Your money in your SecureLine® account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group company that established your account. Because the funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.

- Monthly Statements – Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.

- Time To Decide – As long as you have money in the SecureLine® account, your right to other available settlement options is preserved until the entire balance is withdrawn or the balance drops below $1,000. You may choose to withdraw the balance of your account and place it in a settlement option offered by Lincoln. Please see Page 10 for an explanation of the available settlement options.

- Fees or Administrative Charges – There are no fees for checks and no fees for monthly checking account services. You will be charged a fee of $15 if you stop a payment and $10 if you present a check without sufficient funds. Your checkbook will be enclosed with your account opening packet. You may order additional checks at no cost. Just contact a Northern Trust Customer Service Representative at 1-800-343-2551.

- Minimum Balance – Your SecureLine® account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.

Policy Number: ML5583743

3.  ☐ SETTLEMENT OPTION

If you would like additional information regarding settlement options, please call Lincoln at 1-800-487-1485 extension 8529. After you have carefully reviewed the options, please indicate your selection by name on the line below.

The interest rate will be the greater of the rate stated in the policy or Lincoln's declared rate.

I select the following Settlement Option: _____

EXPLANATION OF SETTLEMENT OPTIONS

☐ Life Only – Proceeds plus interest are paid in installments as long as you are living. Payments cease at your death.

☐ Life With Ten Years Guaranteed – Proceeds plus interest are paid in installments as long as you are living. If you die within ten years after payments start, we will continue payments to your beneficiary for the balance of the ten year period.

☐ Refund Annuity - Proceeds plus interest are paid in installments as long as you are living. If you die before receiving payments equaling the original amount of the contract, we will continue payments to your beneficiary until the total payments to you and your beneficiary equals the original amount of the contract.

☐ Period Certain – Proceeds plus interest are paid in equal installments for any number of years you select from one to thirty.

☐ Amount Certain – Payments are made in equal installments of an amount you select until the proceeds plus interest are exhausted.

1. The frequency of payments: ☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐   Annual

2. The method of payment:   ☐ Check   ☐ Electronic Fund Transfer (EFT)

CONSENT: I authorize any doctor, hospital or other medical or medically related facility, insurance company, consumer reporting agency, employer, the Social Security Administration, the Internal Revenue Service or any other organization or person having any knowledge of the deceased (named below) and his/her earnings or health to give Lincoln Financial Group®, its subsidiaries or authorized representative any information needed to determine policy claim benefits. This may include (but is not limited to) information regarding: medical treatment/history, prescriptions, HIV antibody testing, Acquired Immune Deficiency Syndrome or related complexes, driving records, earnings information, tax returns, mental illness and use of alcohol or drugs. A photocopy of this form is as valid as the original and I may request one. This form will be in force for one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Lincoln Financial Group® at the address indicated above.

_____
Name of Deceased

SIGNATURE:

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

You understand that by furnishing a claim form, the "Company" does not acknowledge that there is any insurance in force or that you are the designated beneficiary. If necessary, the "Company" may ask for more information to confirm this claim.

By signing below, I certify that the information provided is complete and accurate as shown.

Fraud Warning for New York Residents:
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

R.G. Family Security LLC, Judy Goldberger -Managing Member

_____
Claimant's Full Legal Name (Please Type or Print)

_____              10/14/14
Claimant's Signature                                    Date

Policy Number: ML5583743

## FRAUD WARNINGS

**Warning** – Any person who knowingly and with intent to injure, defraud or deceive any insurance company or other person files a statement of claim containing any false, incomplete or misleading information or conceals, for the purpose of misleading, information concerning any fact material to the claim, commits a fraudulent insurance act, which may be a crime, and in certain states a felony. Penalties may include imprisonment, fines, denial of insurance and civil damages.

**These states require the following fraud warnings:**

**California** (For your protection, California law requires this to appear.) – Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado** – It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**District of Columbia: WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

**Kentucky** – Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Minnesota** – A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire** – Any person who, with a purpose to injure, defrauds or deceives any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in **N.H. Rev. Stat. Ann. Subsection 638:20.**

**New Jersey** – Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties.

**Pennsylvania** – Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Puerto Rico** – Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand ($5,000) dollars and not more than ten thousand ($10,000) dollars, or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

# EXHIBIT D



Claim Dept. - 5310
P.O. Box 21008
Greensboro, NC 27420-1008
Phone: 800-487-1485

Overnight Address:
Lincoln Financial Group
Claim Dept. - 5310
100 North Greene Street
Greensboro, NC 27401

Policy Number: __ML5583743__ _____ _____ _____

## CLAIMANT'S STATEMENT

INSTRUCTIONS -- Important Information – please read carefully and completely

Life Death Claim Items that are always required:

- Certified death certificate showing the manner of death
- Claimant's Statement completed and signed by each beneficiary. Each beneficiary must have a separate Claimant's Statement.

Additional documentation and instructions may be required when the beneficiary is a(n):

- Estate
- Trust
- Guardian (minors and incompetent beneficiaries)
- Corporation
- Partnership
- Assignment to third parties

Please refer to the Distinctive Payee Arrangements form (number CL05984) for full instructions

Power of Attorney: If an attorney-in-fact under a Power of Attorney is completing the Claimant's Statement on behalf of the claimant, a copy of the Power of Attorney document must be provided. If the Power of Attorney document was executed more than three years ago, additional information from the attorney-in-fact may be required. The Social Security number of the person who granted the Power of Attorney must be used. The attorney-in-fact's Social Security number may not be used.

Other Possible Requirements (please note that failure to include this information where applicable may cause delay in processing the claim.):

- Deceased Beneficiary -- if any named beneficiary of the contract is deceased, a copy of the death certificate of such deceased beneficiary must accompany this form.

- Foreign Death -- if death of the insured occurred outside of the United States, we will require a Report of the Death of an American Citizen Abroad and a Foreign Death Questionnaire. A Translated Certified Copy of the Death Certificate may also be required.

- Consent to transfer or a state tax waiver -- A form for consent or notice is required in some states. When consent is required, the state must give approval before the death benefit can be paid. If this form is required, it will be provided to the beneficiary by us.

Lincoln Financial Group (Lincoln) does not require that the policy(ies) be returned to Lincoln for filing of a claim. However, Lincoln does ask that the relevant policy(ies) be destroyed once payment is received.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
CL05983_1-13

Page 1 of 6
1/13

Policy Number: __ML5583743__

### DECEASED'S INFORMATION

If the deceased was known by any other names, such as maiden name, hyphenated name, nickname, derivative form of the first and/or middle name, please include them below:

Name: __Reisl Goldberger__

Address: __90 Ross Street__

City, State, Zip: __Brooklyn, New York  11219__

Date of Birth: REDACTED 30                                  Date of Death: __10/14/14__

Social Security Number: REDACTED

Citizenship: Was deceased a U.S. Citizen?  XX Yes   ☐ No

If "No", please list country of citizenship. _____

Cause of Death: _____

If the policy (ies) contains an Accidental Death Benefit are you claiming it?  ☐ Yes   XX No

\* Furnish all detailed newspaper clippings, police reports and coroner's report. Lincoln may require additional information, depending on the circumstances of the death.

### CLAIMANT INFORMATION:

Name: __Reisl Goldberger Insurance Trust, Alexander Ashkenazi, Trustee__

Address: __1426 57th Street__

City, State, Zip: __Brooklyn, New York  11219__

Social Security or Tax ID Numb REDACTED 8764                    Date of Birth: REDACTED 6

Daytime Telephone No: __718-506-1400__                    Evening Telephone No: _____

Email Address (optional): _____

Claimant's relationship to Decedent: I am filing this claim as:

    ☐    An individual who is a named beneficiary under the policy

    XX    A Trustee of a Trust which is a named beneficiary under the policy

    ☐    An Executor of an Estate which is a named beneficiary under the policy

    ☐    Other _____

Citizenship: Are you a U.S. Citizen?  XX Yes   ☐ No

If No, please indicate country of Residence: _____ and Citizenship: _____

If you are a resident of a foreign country, a W-8BEN or a W-9 must be completed.

This form can be found at: http://www.irs.gov/pub/irs-pdf/fw9.pdf or http://www.irs.gov/pub/irs-pdf/fw8ben.pdf

If you would like us to mail your proceeds to an address other than the above, please specify:

Name: _____

Address: _____

City, State, Zip: _____

You can help expedite the payment of your claim by completing all of the information on this page.

Policy Number:  ML5583743

For your convenience and assistance when your claim is approved, pages 3 through 6 offer you the ability to receive your death benefits or place your funds into one of the other settlement options.  Please read your options carefully and know that Lincoln is available to address any questions that you may have.  The options are numbered for your convenience.

**PAYMENT OPTIONS:**
Please select one of the following options. Please Note: If the owner of the Contract/Certificate has previously designated a payment option, Lincoln is required to disburse funds pursuant to that designation.

1.  ☒  LUMP SUM – Three options are provided

   If you select this option, you may select a single check, EFT or Wire. If you do not select a payment option the default method of payment will be a single check.

   ☒  One Single Check

   ☐  Electronic Funds Transfer (for EFT please complete the fields below)

      Distributions through EFT will be deposited directly into your account at your financial institution.

   ☐  Wire Deposit** (A fee of $25 will be assessed, except for Custodial Accounts. Fees are subject to change.)

   Complete the information on where payments should be deposited:

   Financial Institution's Name: _____

   Telephone Number: _____

   Address: _____

   City, State, Zip: _____

   Type of Account: ☐ Checking (must attach a "voided" check)

                    ☐ Savings (must attach Savings account statement with routing number, account number and accountholder name)

   ABA/Transit Routing Number (Contact your Financial Institution for this.): _____

   Account Number: _____

**Note: If requesting a wire, you must indicate the financial institution's address above.

Your signature on page 5 of this form serves as authorization to deposit payments and initiate corrections, if necessary, to the financial institution named above. The institution must be a member of the National Automated Clearing House Association (NACHA). You also agree to hold Lincoln harmless for the date funds are credited by the institution to your account. This authorization will remain in effect until your funds are depleted or you notify Lincoln of a change in sufficient time to act.

Policy Number: ML5583743

2.    ☐ SecureLine® Interest-Bearing Checking Account (Only available for payments $50,000 or greater)

SecureLine® is a service offered to help you manage insurance and annuity proceeds. With SecureLine®, an account is established from the proceeds payable on a policy administered by a Lincoln company. Lincoln's contractual obligation to pay those proceeds is satisfied by depositing the proceeds into your account. The Northern Trust Bank (Northern Trust) administers your account on Lincoln's behalf and the funds supporting your account are held within Lincoln's general account. Once your SecureLine® account is opened, you will receive a personalized checkbook. If you decide you want the entire proceeds immediately, you just need to write one check for the entire balance. You can write as many checks as you wish. Each check must be for at least $250 and the total of all checks written may not exceed your balance. Otherwise you can use this account for paying expenses as they occur -- while earning interest on your money.

- Interest Rates -- Your SecureLine® account starts earning interest the day the account is opened. Interest is compounded daily and credited to your account on the last day of each month. The minimum rate credited is equal to the national average for interest-bearing checking accounts as published daily by Bloomberg, plus 1%. Lincoln may increase that minimum rate at our discretion. The interest will be updated monthly. You can find the current interest rate that will be credited to your account at www.lfg.com by clicking on the Quick Link "File a Claim". You begin to earn interest the same day the account is opened and continue to earn interest until all the funds are withdrawn. The interest rate credited to your SecureLine® account may be more or less than the rate earned on funds held in Lincoln's general account. Consider comparing this interest rate to your bank account interest rate or consult your financial professional to compare interest rates on comparable bank or mutual fund accounts. Interest earned on your account balance may be taxable; IRS form 1099-INT will be sent in January of each year to report taxable income. You should consult your tax advisor for more information.

- Protection Of Deposits -- Your money in your SecureLine® account is protected because it is held in Lincoln's general account and is guaranteed by the full faith and credit of the Lincoln Financial Group company that established your account. Because the funds are not held in a federally-regulated bank, your funds are not protected by the Federal Deposit Insurance Corporate (FDIC). However, in the unlikely case of insolvency of Lincoln, your funds are protected by your state's insurance guaranty system. Contact the National Organization of Life and Health Guaranty Associations (http://nolhga.com; 703-481-5206) to learn more about what limits might exist related to state insurance guaranty protection.

- Monthly Statements -- Each month you will receive a statement showing your current balance, withdrawals, interest credited and any other activity. Cancelled checks are not returned with your statement.

- Time To Decide --As long as you have money in the SecureLine® account, your right to other available settlement options is preserved until the entire balance is withdrawn or the balance drops below $1,000. You may choose to withdraw the balance of your account and place it in a settlement option offered by Lincoln. Please see Page 10 for an explanation of the available settlement options.

- Fees or Administrative Charges -- There are no fees for checks and no fees for monthly checking account services. You will be charged a fee of $15 if you stop a payment and $10 if you present a check without sufficient funds. Your checkbook will be enclosed with your account opening packet. You may order additional checks at no cost. Just contact a Northern Trust Customer Service Representative at 1-800-343-2551.

- Minimum Balance -- Your SecureLine® account will remain open until your balance drops below $1000, at which time your account will be automatically closed and a check for the remaining funds plus interest will be mailed to you.

Policy Number:  ML5583743

3.  ☐ SETTLEMENT OPTION

If you would like additional information regarding settlement options, please call Lincoln at 1-800-487-1485 extension 8529. After you have carefully reviewed the options, please indicate your selection by name on the line below.

The interest rate will be the greater of the rate stated in the policy or Lincoln's declared rate.

I select the following Settlement Option: _____

EXPLANATION OF SETTLEMENT OPTIONS

☐ Life Only – Proceeds plus interest are paid in installments as long as you are living. Payments cease at your death.

☐ Life With Ten Years Guaranteed – Proceeds plus interest are paid in installments as long as you are living. If you die within ten years after payments start, we will continue payments to your beneficiary for the balance of the ten year period.

☐ Refund Annuity - Proceeds plus interest are paid in installments as long as you are living. If you die before receiving payments equaling the original amount of the contract, we will continue payments to your beneficiary until the total payments to you and your beneficiary equals the original amount of the contract.

☐ Period Certain – Proceeds plus interest are paid in equal installments for any number of years you select from one to thirty.

☐ Amount Certain – Payments are made in equal installments of an amount you select until the proceeds plus interest are exhausted.

1. The frequency of payments: ☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐    Annual

2. The method of payment:  ☐ Check   ☐ Electronic Fund Transfer (EFT)

CONSENT: I authorize any doctor, hospital or other medical or medically related facility, insurance company, consumer reporting agency, employer, the Social Security Administration, the Internal Revenue Service or any other organization or person having any knowledge of the deceased (named below) and his/her earnings or health to give Lincoln Financial Group®, its subsidiaries or authorized representative any information needed to determine policy claim benefits. This may include (but is not limited to) information regarding: medical treatment/history, prescriptions, HIV antibody testing, Acquired Immune Deficiency Syndrome or related complexes, driving records, earnings information, tax returns, mental illness and use of alcohol or drugs. A photocopy of this form is as valid as the original and I may request one. This form will be in force for one year from the date shown below. I may revoke it at any time for information not then obtained by writing to Lincoln Financial Group® at the address indicated above.

Reisl Goldberger
Name of Deceased

SIGNATURE:

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

You understand that by furnishing a claim form, the "Company" does not acknowledge that there is any insurance in force or that you are the designated beneficiary. If necessary, the "Company" may ask for more information to confirm this claim.

By signing below, I certify that the information provided is complete and accurate as shown.

Fraud Warning for New York Residents:
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Alexander Ashkenazi, Trustee Reisl Goldberger Insurance Trust
Claimant's Full Legal Name (Please Type or Print)

_____                                    11-17-14
Claimant's Signature                                                           Date

Affirmed to before me
Ki's gs county  NY

GEDALIA MARYL
...y Public - State of New York
No. 01MA6226310
Qualified in Kings County
My Comm. Expires Aug. 9, 20__

GL05983_1-13                                                                                   Page 5 of 6

# EXHIBIT E

TRUST AGREEMENT
(Amended)
Dated: 9/25/07

Made By

REISL GOLDBERGER, As Settlor

And

ALEXANDER ASHKENAZI, As Trustee

TO BE KNOWN AS

"REISL GOLDBERGER INSURANCE TRUST"

Tax ID #: 20-7418763

AMENDMENT
TO
REISL GOLDBERGER INSURANCE TRUST

Tax ID #: 20-7418763

AMENDMENT to INDENTURE OF TRUST, made this  day of                                    ,
between REISL GOLDBERGER of 90 Ross Street, Brooklyn, New York 11211 (herein the
"Settlor"), and ALEXANDER ASHKENAZI of 1426 57th Street, Brooklyn New York 11219 (the
"Trustee") and HERMAN GOLDBERGER of 1074 52nd Street, Brooklyn, New York 11219 (herein
the "Beneficiary")

WHEREAS, the Settlor established an Indenture of Trust dated 5/29/07  for
the benefit of  the Beneficiary and Settlor's heirs  known as the Reisl Goldberger Insurance Trust
(the "Trust"); and

WHEREAS, Article Tenth of the Indenture of Trust permits an amendment
thereto pursuant to Section 7-1.9 of the Estates, Powers and Trusts Laws of the State of New York;

NOW, THEREFORE, the Indenture of Trust is amended and completely
restated to read as annexed hereto.

IN WITNESS WHEREOF, the Settlor, the Trustee and the Beneficiary have
hereunto set their hands and seals all as of the day and year first above written.

Reisl Goldberger, Settlor

Herman Goldberger, Beneficiary

Alexander Ashkenazi, Trustee

REISL GOLDBERGER INSURANCE TRUST
(Amended)

Tax ID #: 20-7418763

INDENTURE OF TRUST, made this  day of  SEP /25 / ,07
between REISL GOLDBERGER of 90 Ross Street, Brooklyn, New York
11211 (herein the "Settlor"), and ALEXANDER ASHKENAZI of  1426 57th
Street, Brooklyn New York 11219 (hereinafter referred to individually
as a "Trustee" and at times, or if there shall be more than one
Trustee then collectively, as the "Trustees").

W I T N E S S E T H :

The Settlor hereby irrevocably assigns, transfers and
delivers to the Trustees all her right, title and interest and all
incidents of ownership of whatsoever nature which she now has or
hereafter may have in and to the insurance policies or certificates of
insurance on the life of the Settlor described in Schedule A, attached
hereto and made a part hereof (hereinafter sometimes collectively
referred to as the "First Policy").

This Trust shall be known as the "REISL GOLDBERGER
INSURANCE TRUST."

Except as specifically provided herein, all discretionary
decisions by the Trustees shall be with the unanimous consent of all
the Trustees. However, Alexander Ashkenazi (the initial Trustee), or
his respective successors or designees, may alone, without any other
trustee, open a bank account or any other account at a financial
institution and be the sole signatory on that account.

Receipt of the physical possession of the First Policy
listed in Schedule A is hereby acknowledged by the Trustees.  The
First Policy and the proceeds thereof as well as the proceeds of any
additional policy or policies of insurance on the Settlor's life which
may hereafter be made payable to the Trustees (each such policy
including the First Policy hereinafter referred to as a "Policy") are
to be held in trust by the Trustees and to be managed and disposed of
in accordance with the provisions of this Trust Indenture.  Such
Policy and the proceeds thereof and any other property hereafter
transferred to or acquired by the Trustees are hereinafter
collectively called the "trust estate".  Each Policy hereinafter

acquired by the Trustee shall be listed on Schedule A upon such acquisition.

The Settlor covenants and agrees that she will hereafter execute, or cause to be executed, any instrument or instruments which may be necessary, desirable or appropriate to vest in the Trustees as a matter of record, all right, title and interest and all incidents of ownership in and to each Policy described in Schedule A or to any other policies of insurance or other property which may be hereafter transferred to the Trustees.

FIRST:  The Trustees shall be the complete and absolute owner of each Policy held in the trust estate and of each and every incident of ownership thereunder and shall have the right to exercise any and all of the rights, options or privileges which belong to an absolute owner of each Policy or which are granted by the terms of each Policy or by the terms of this Trust Indenture including, without limitation of the foregoing, the right to change the beneficiary under each Policy, to sell or assign each Policy, to borrow money on each Policy and to hypothecate the same to secure any loan, to repay any loan, to receive any dividends on each Policy or to apply any such dividends pursuant to any option available under each Policy, to surrender each Policy for cash or for its paid-up value or for extended term insurance and to receive all payments on any amounts which may be made during the life of the insured or thereafter on each Policy held in trust.

SECOND:  The Trustees shall be under no obligation to pay the premiums, dues, assessments, and other charges which may become due and payable on each Policy, nor to see that such payments are made by the Settlor or by any other person, nor to notify the Settlor or any other person that such payments have become due, and the Trustees shall be under no liability to anyone in case such premiums, dues, assessments or other charges are not paid, or for any result of the failure to make such payments.  The Trustees may, in their absolute discretion, pay any such premiums, dues, assessments or other charges from the income of the trust, if any is available for this purpose, but if none from the principal of the trust, if any.  The Trustees shall have absolute discretion to determine whether any such payment shall or shall not be made or whether each Policy shall be allowed to lapse or be surrendered or be exchanged for paid-up insurance or be allowed to continue upon a term basis or be otherwise disposed of, and

-2-

the decision of the Trustees with respect thereto, made in good faith,
shall be a complete protection to the Trustees.  Notwithstanding the
foregoing, if the Trustees shall determine not to pay any premium,
dues, assessment or other charge for any reason whatsoever, including
the lack of income or principal funds, the Trustees may, but shall not
be required to notify the Settlor and the competent adult
beneficiaries of the trust in writing of their decision and they or
any of them or any other person may provide the necessary funds for
the payment of such premiums, dues, assessments or other charges, but
no one shall be under any obligation to do so.  Nothing in this
Indenture shall be construed as a covenant by the Settlor to pay
premiums or other charges on the Policy or to furnish the Trustees
with funds sufficient to pay any such premiums or other charges.  The
Trustees shall be under no liability to anyone in case such premiums,
dues, assessments or other charges are not paid, nor for any result of
the failure to make such payments.

     THIRD:  Upon maturity of each Policy by reason of the death
of the Settlor, or otherwise, the Trustees shall receive such sum or
sums as may be paid to them, and are hereby authorized to execute all
necessary receipts and releases to the insurance company or companies
concerned, and shall be under the duty upon being advised of the death
of the Settlor, or maturity of each Policy during the lifetime of the
Settlor to make efforts to collect such sums as may appear to be due
upon each Policy at that time held hereunder or payable to the
Trustees as beneficiary.  The Trustees may utilize any cash in their
hands to meet expenses incurred in connection with enforcing payment
of any obligation to them.  The Trustees may take any action which in
their discretion they may deem advisable to enforce payment of the
proceeds of each Policy held hereunder or payable to them, but shall
not be required to take any such action unless first secured to their
satisfaction against all expenses or liability incurred thereby.

     The Trustees are authorized to compromise and adjust claims
upon such terms and conditions as they may deem just, and the decision
of the Trustees shall be binding and conclusive upon all persons and
corporations interested therein.

     The respective insurance companies shall be authorized to
make payment to, and otherwise to deal solely with, the Trustees, as
the owner of each Policy and shall not be required to inquire as to
the validity, expediency or propriety of any transaction effected by,

or act or omission of, the Trustees, or as to the application of any funds paid to the Trustees; any exercise of rights, privileges, options, or powers and any surrender, assignment, release, consent, compromise, settlement, discharge or acquittance, made by the Trustees, shall protect each insurance company, and shall be binding upon all persons interested under this Indenture.

FOURTH:   The net proceeds of each Policy received by the Trustees, whether collected as a result of the death of the Settlor, or otherwise, including any and all proceeds which may be received by the Trustees during the life of the Settlor as return of premiums, dividends, disability payments or otherwise, together with all other additions and contributions to the trust estate, whether testamentary or inter vivos, shall be the principal of the trust estate and the Trustees shall hold, manage, invest and, from time to time, reinvest the trust estate (provided, however, that nothing herein contained shall be construed to prohibit the Trustees from holding in trust the Policy although the same may not be productive of income or may be wasting assets) and shall dispose of the principal and income thereof as follows:

(A)   During the lifetime of the Settlor (except as provided in Subsection (B) below), the Trustees, from time to time, may pay to or apply income or principal of the Trust for the benefit of Cong. Mesamche (tax ID#:22-2453421 or if such organization or its successor no longer exists to one or more members in a class whose members consist of one or more charitable organizations that are exempt from federal income tax and a contribution to which is deductible under U.S. federal income tax laws, all or part of the income and/or principal of the trust at such time or times and in such proportion among such class members as the Trustees, in their sole discretion, shall determine, and any undistributed income of the trust shall be accumulated and added to the principal of the trust estate.

(B) (1) Upon the death of the Settlor, the remaining principal of the trust shall be paid as follows: (i) ninety per cent (90.0%) to Congregation Mesamche (tax ID#: 22-2453421) or if such organization or its successor no longer exists to one or more members in a class whose members consist of one or more charitable organizations that are exempt from federal income tax and a contribution to which is deductible under U.S. federal income tax laws one or more members in a class whose members consist of one or more

-4-

charitable organizations that are exempt from federal income tax and a contribution to which is deductible under U.S. federal income tax laws, in such proportion among such organizations and persons as the Trustees, in their sole discretion, shall determine; (ii) ten per cent (10%) to the Settlor's grandson, Herman, or if he is not then alive, to said son's estate.

(2) Upon of a sale of any Policy, the sales proceeds shall be paid, as follows: (i) ten percent (10%) of the "sales profit" (that is, gross sales proceeds reduced by the aggregate insurance premiums paid and further reduced by any sales expenses) to the Settlor's grandson, Herman, or if he is not then alive to said son's estate; and (ii) the balance to Congregation Mesamche (tax ID#: 22-2453421) or if such organization or its successor no longer exists to one or more members in a class whose members consist of one or more charitable organizations that are exempt from federal income tax and a contribution to which is deductible under U.S. federal income tax laws one or more members in a class whose members consist of one or more charitable organizations that are exempt from federal income tax and a contribution to which is deductible under U.S. federal income tax laws, in such proportion among such organizations and persons as the Trustees, in their sole discretion, shall determine.

FIFTH: [Intentionally Deleted]

SIXTH:  (A)  The Trustees' discretionary powers to distribute, pay or accumulate income and their discretionary powers to invade principal are granted subject to the following provisions:

(1)  In exercising their discretionary powers over income or principal, the Trustees may take into consideration or ignore, as they deem advisable, any other resources which the objects of their powers may have of which the Trustees have knowledge, but in all instances the Trustees shall consider the interests of current beneficiaries and ignore the interests of succeeding beneficiaries; and the judgment of the Trustees as to whether, when, to what extent, and for whose benefit their discretionary powers over income or principal shall be exercised, shall be conclusive and binding upon all persons interested in the trusts established hereunder and shall not be subject to court review.

-5-

(2)   The Trustees may pay or apply income or principal to or for the benefit of any one or more objects of their powers to the exclusion of all others and may specifically allocate different classes of income to different persons; and may specify when and in what manner income shall be paid to or applied to the use of the trust beneficiaries.   Payments or applications of income or principal may be made to one or more issue of the second or more remote degree, even though the parent of such issue be living and be a person to whom payment or application may be made.   Unless otherwise specifically directed by the Trustees, no payment or application of income or principal pursuant to the exercise of any discretionary power shall be taken into account in making any subsequent (interim or final) distribution of income or principal, whether discretionary or otherwise.

(B)   As a guide to the Trustees, but only by way of illustration and without limiting their plenary powers, the Settlor suggests that principal may be paid or applied in the Trustees' discretion not only to enable a beneficiary to meet the expenses of emergencies or illness or medical or dental or nursing care, but also to make up deficiencies in income caused by inflation or changes in the beneficiary's cost of living; because of the burdens of income or estate taxation or changes in the tax laws; to enable a beneficiary to take advantage of a business or professional or investment opportunity, assume and meet family responsibilities, travel, acquire a dwelling (including a seasonal dwelling or a cooperative apartment), obtain an education (including graduate and professional school) or for any other reason whatever that the Trustees may have at any time.

SEVENTH:   If, pursuant to this Trust Indenture, all or any part of the then principal of any trust established hereunder shall vest in absolute ownership in a minor or minors (by which the Settlor intends to mean a person under the age of twenty-one (21) years, if permitted by law), the Settlor authorizes and empowers the Trustees, or their successors, in their discretion, to make payment or distribution to the parent of such minor, the guardian of the person or property of such minor, or a custodian for such minor under the applicable Uniform Gift to Minors Act, or a person with whom such minor may reside, without bond, or they may defer payment or distribution of any part or all thereof, in a separate fund for the benefit of such minor during the minority of such minor, or such lesser period of time as the Trustees may determine, notwithstanding

-6-

that such property may consist of investments not authorized by law for trust funds, and shall invest and reinvest the same, collect the income therefrom and, during the minority of such minor, the Settlor authorizes and empowers the Trustees, in their discretion, to make payments out of principal, income and accumulated income, at any time or from time to time in any or all of the following ways: (a) by paying the same to the parent, guardian or the person with whom such minor may reside; (b) by paying the same to any custodian for the minor under the applicable Uniform Gifts to Minors Act; (c) by paying directly to the minor such sum or sums as they may deem advisable as an allowance; (d) by depositing the same in a bank account in the name of the minor; or (e) by expending the same in such other manner as the Trustees, in their discretion, believe will benefit such minor.  With respect to any property held under this Article, the Trustees shall have all the powers, privileges, discretions and immunities conferred upon them elsewhere in this Trust Indenture and may deduct, without prior judicial authorization, the income and principal commissions of trustees in respect of the property administered.

EIGHTH:  Prior to the actual distribution, no income or principal of any trust which may be or becomes distributable to any beneficiary in accordance with the provisions hereof shall be subject to the debts, obligations or liabilities of such beneficiary, or to execution, attachment, or other judicial process of whatsoever character, nor shall it be assignable or transferable by such beneficiary, voluntarily or involuntarily, and the distribution of principal or income shall not be anticipated.

NINTH: [Intentionally Deleted]

TENTH:  This Trust Indenture and the trusts established hereunder are hereby declared to be irrevocable and this Trust Indenture may not be modified, amended or revoked in any way whatsoever.

ELEVENTH:  The Settlor reserves the right to himself, or to any other person, at any time by inter-vivos conveyance or Will, to add to the principal of the trust estate or any trust herein created and any property so added shall be held, administered and distributed as part of such trust or trusts.  In the absence of instructions to the contrary, such additions shall be added to the principal of the trust estate and divided equally among all trusts subsisting under

-7-

this Indenture.  The Trustees are hereby empowered, but not required, to accept such property.

TWELFTH:  The Trustees, and any successors, shall have, with respect to any and all property held hereunder, including funds held for minors hereunder, the following powers, in addition to those conferred by law:

1.  To retain any such property and to receive, acquire, invest in and retain stocks, whether common or preferred, bonds, securities, undivided interests in investment trusts, any common trust fund, and any property, real or personal, foreign or domestic, whether or not such property is a wasting or non-income producing asset, including life insurance on the life of the Settlor or any beneficiary hereunder, without any duty to diversify and without any restrictions placed upon fiduciaries by any present or future applicable law, rule of court or court decision.

2.  To sell any such property at either public or private sale for cash or on credit, to exchange any such property and to grant options for the purchase thereof without any limitation on the period of any such option.

3.  To abandon any property, if it shall be deemed advisable.

4.  To participate in any plan of corporate reorganization, consolidation, merger or similar plan.

5.  To exercise all conversion, subscription, voting and other rights of whatsoever nature pertaining to trust investments and to grant proxies, discretionary or otherwise.

6.  To enter into voting trust agreements with respect to any securities at any time held hereunder, for any period that may be lawful and to take such action as may be deemed appropriate.

-8-

7.  To manage any real property held hereunder as if the absolute owner thereof, including the power to lease, or grant options to lease, for periods to begin presently or in the future, without regard to statutory restrictions or the probable duration of any trust; to erect, demolish or alter buildings and improve and manage property; to make ordinary and extraordinary repairs; to grant easements and charges; to subdivide; to adjust boundary lines; to partition, mortgage and convey property.

8.  To borrow money, from others or from themselves for any purpose incidental to the administration of any trust hereunder, and to mortgage or pledge any securities or other property held by them as security therefor.

9.  To purchase securities at a premium and to charge such premium against either principal or income, or partly against principal and partly against income.

10.  To determine whether or to what extent receipts should be deemed income or principal, whether or to what extent expenditures should be charged against principal or income and what other adjustments should be made between principal and income.

11.  To hold any securities or other property in any form or name, with or without disclosing the fiduciary relationship, and their liability shall not be increased thereby.

12.  To hold trusts administered hereunder separately or in solido.

13.  To make distributions hereunder in cash or in kind, or partly in cash and partly in kind, and in their discretion, to allocate particular assets or portions thereof or undivided interests therein to any one or more of the beneficiaries hereunder taking into account the income tax bases of such assets as is deemed to be for the best interests of the beneficiaries of the trust estate. For the purposes of such distribution, to select such securities or other property as is deemed suitable.

-9-

14.  To compromise and settle any liabilities of any trust created hereunder, and any claims that any trust created hereunder shall have against others.

15.  To execute and deliver any and all representations, warranties, indemnities and guarantees incidental to the administration of the trust estate or with respect to any stocks, securities or property, real or personal, at any time held in the trust estate, including, without limitation by the specification thereof, the power to execute and deliver representations, warranties, indemnities and guarantees of every and any nature whatsoever deemed advisable in connection with any public or private offering or sale of any securities at any time held in the trust estate.

16.  To engage and remunerate agents, including legal counsel, accountants, investment counsel, custodians, appraisers and other experts.

17.  To insure in such companies and against such hazards as is deemed advisable.

18.  To accumulate for a minor and add to the principal of his trust so much of the income payable to him as is deemed not to be required for the minor's support and education.

19.  To apply to the use of any person income or principal payable to him or, in the case of a minor or of any person who is deemed incapable of making proper disposition thereof, by payments on his behalf to a parent or to a custodian under the uniform gift to minors act or to anyone with whom he resides, or by paying his bills, or by paying him an allowance directly, without the intervention of any guardian or other fiduciary and without the obligation to see to the future application thereof.

20.  To take into consideration or to ignore the other resources of a beneficiary to whom payments or applications of principal or income are discretionary hereunder.

-10-

21.   To enter into transactions with any other decedent's estate or any living or testamentary trust in which any one interested hereunder may have a beneficial interest even though any executor of such other estate or trustee of such other trust is also a Trustee hereunder.

22.   Severally to authorize, by instrument in writing, any person or corporation, including any co-fiduciary, bank or trust company, to act in the place of the Trustees with respect to specified transactions, to sign a particular check or checks, or to execute any other specifically stated instruments in the name of the Trustees.

23.   All the powers granted in this Indenture may be exercised after the termination of any trust created hereunder in connection with the proper administration and distribution thereof.

24.  To exercise all the foregoing powers alone or with others, even though any of the Trustees are personally interested in the property that is involved, notwithstanding any rules of law relating to divided loyalty or self-dealing.

25.   Generally to administer and invest any trust created hereunder as freely as the Settlor might do without any liability for depreciation or loss and without any restriction whatsoever except the duty to act in good faith and with reasonable care.

The foregoing powers shall not be deemed to be an exclusive enumeration of the authorities and discretions of the Trustees, they being specifically empowered to take such actions, and exercise such powers and discretions as they shall deem appropriate or necessary in the administration of the trust estate, whether or not authorized or appropriate for fiduciaries, but for this broad grant.

THIRTEENTH:   (A)   A Trustee may resign at any time by an instrument in writing which shall specify the date as of which such resignation is to take effect and which shall be delivered or mailed, at least thirty (30) days prior to the date so specified, to the

-11-

Settlor, if living, otherwise to the other Trustees, but if none, to the competent adult current income beneficiaries of the trust estate. The resigning Trustee shall be discharged from all further duty or obligation to act as Trustee under this Trust Indenture after the effective date of resignation, except the duty and obligation to execute all such instruments of transfer or conveyance as may be appropriate or necessary. The expenses of a resigning Trustee's accounting shall be a proper charge to the trust estate.

(B) If a Trustee shall for any reason cease to act hereunder, such Trustee, if living and able to act, and if not, his spouse, and if she is not then living or able to act, his estate or representative, shall be empowered to appoint a successor Trustee or Trustees or to remove the Trustee then in his place and to appoint a successor Trustee or Trustees.

(C) Any appointment, qualification or revocation hereunder shall be by an instrument in writing signed and acknowledged by the person or persons making such appointment, qualification or revocation and filed with the Trustees then in office or if none with the successor Trustee. Any appointment made pursuant to this provision of a successor to take effect in the future may be revoked at any time prior to the happening of the event upon which such appointment is to take place.

(D) The Settlor directs that the Trustees may, in their discretion, transfer the situs of the administration of any trust established hereunder to such other jurisdiction as they determine to be in the best interests of the trust estate and the beneficiaries thereof. Such transfer shall become effective without the approval of any court and shall be binding upon all persons interested in the trust estate.

(E) No Trustee shall be entitled to any Trustee's commission or other compensation for his services as Trustee hereunder, but the Trustees shall be reimbursed for any expenses incurred by them in the performance of their duties hereunder. A Trustee upon accepting the trust hereunder shall be deemed to have waived all commissions or other compensation to which he or she may otherwise be entitled hereunder as a Trustee.

-12-

(F)   The Settlor authorizes (but does not direct) the Trustees to divide any trust established hereunder with an inclusion ratio (as defined in Section 2642(a)(1) of the Internal Revenue Code, or any successor thereto), of neither one nor zero into two separate trusts representing fractional shares of the property being divided in order that the Federal generation-skipping transfer tax inclusion rate for one such trust shall be zero and for the other trust shall be one.

(G)   (1)   The Settlor authorizes (but does not direct) the Trustees to elect solely for Federal generation-skipping transfer tax purposes to treat all or any part of property with respect to which an election has been made under Section 2056(b)(7) of the Internal Revenue Code, or any successor thereto, as if such election to treat such property as qualified terminable interest property had not been made.

(2)   If the Settlor's Executors exercise the special election provided by Section 2652(a)(3) of the Internal Revenue Code, or any successor thereto, with respect to any trust created hereunder and the allocation of the Settlor's generation-skipping transfer tax exemption is made to the trust property the Trustees are authorized, in their discretion, to set apart property constituting a fractional share of the trust property as a separate trust so that its inclusion ratio is zero.

(H)   (1)   The Settlor authorizes the Trustees to create in a child of the Settlor who is a beneficiary of a trust established hereunder a general power of appointment within the meaning of Section 2041 of the Internal Revenue Code, or any successor thereto, over the principal of such trust or any portion thereof (including a fractional share or pecuniary amount) of which such child is the current income beneficiary if such trust or fractional share or pecuniary amount is or would be distributable to a "skip person", as defined in Section 2613(a) of the Internal Revenue Code, or any successor thereto, and is not otherwise exempt from the Federal generation-skipping transfer tax without regard to the existence of such general power of appointment.

(2)   Any power of appointment created under this paragraph (H) shall be granted by an instrument in writing signed and acknowledged by the Trustees authorized to grant such powers of appointment and delivered to the donee or filed with the trust

-13-

records.  The exercise of any power of appointment granted hereunder may, in the discretion of the Trustees (authorized hereunder) be conditioned upon the written consent of such Trustees.  Any power of appointment created pursuant to this paragraph (H) may be revoked at any time prior to the happening of the event upon which such appointment is to take effect, by an instrument in writing signed and acknowledged by the Trustees (authorized hereunder) and delivered to the donee of the power of appointment or filed with the trust records. The Trustees (authorized hereunder), in their discretion, may irrevocably release the right to grant or eliminate such power.  The Trustees (authorized hereunder), in their discretion, may divide the trust principal into two fractional shares based upon the then portion of the trust that would be includible in the gross estate of the child holding such power if he or she died immediately before such division (in which case the power shall be over the entire principal of one share and over no part of the other share) and each such share shall be administered as a separate trust unless the Trustees shall, in their discretion, thereafter combine such separate trusts into a single trust which they are hereby authorized to do.  In authorizing such action it is the Settlor's hope (but he does not direct) that a general power will be kept in effect when the Trustees believe the inclusion of the property affected thereby in the child's gross estate may achieve a significant savings in transfer taxes by having an estate tax rather than a Chapter 13 tax imposed on the property subject to the general power, which may also permit a greater use of the generation-skipping transfer tax exemption under Section 2631(a) of the Internal Revenue Code, or any successor thereto.

(3)  Any power of appointment granted under this paragraph (L) shall not be deemed exercised unless the donee of such power specifically identifies the power and expressly declares his or her intention to exercise the power and absent such identification of the power and declaration of intention, the power shall be deemed unexercised.

(I)  No Trustee hereunder, whether named or appointed successor as hereinabove provided, shall be required to give any bond or other security for the faithful performance of his or her duties in any jurisdiction in which he or she may be called upon to act.

-14-

FOURTEENTH:  This Trust Indenture, and the trusts created hereunder shall be construed, governed and regulated in all respects under the laws of the State of New York.

FIFTEENTH:  (A)  If necessary or appropriate, whenever and wherever in this Trust Indenture words are used in one gender, they shall be construed to include the other genders and wherever used in the singular, to include the plural.

(B)  Unless to the contrary expressly stated, all distributions or divisions to and among issue shall be construed to mean distributions or divisions to and among lawful issue then living, in equal shares, per stirpes.

(C)  Unless to the contrary expressly stated, upon the termination of any trust, all accrued or accumulated income shall belong to the next eventual estate.

SIXTEENTH:  (A)  The competent adult current income beneficiaries of the trust estate or any trust created hereunder, shall have the power by an instrument in writing, signed and acknowledged by such person or persons, to settle the account of proceedings of the Trustees, and such settlement shall be conclusive and binding upon all persons at any time interested under this Trust Indenture, including infants or unborn persons, whether in respect of income or in respect of principal, and the approval of such account by the aforesaid person or persons shall constitute a full and complete discharge and release of the Trustees, from all further liability, responsibility and accountability for or with respect to the accounts and transactions of such Trustees as set forth in the account, both as to the income and as to the principal of the trust estate.  This power is granted in part to enable the Trustees to obtain prompt and frequent settlement of their accounts and approval of their authorized acts, which shall be binding upon all interested persons without the delay, trouble and often heavy expenses incident to judicial settlements even where the rights of infants or unborn persons are involved, the Settlor believing that the purposes and objectives of this Indenture will be better served thereby.

(B)  If, in any judicial proceeding relating to this Trust Indenture or any trust created hereunder, a party thereto who is not under a disability shall have the same interest as any individual

-15-

interested in such proceeding who is under a disability, then it shall not be necessary to serve process in such proceeding upon any such individual who is under a disability.

(C)   The Trustees shall not be required to render to any court annual or other periodic accounts, whether required by statute or otherwise.  The Trustees shall take such action for the settlement or approval of their accounts at such time or times and with or without court proceedings as they, in their discretion, shall determine.

SEVENTEENTH: [Intentionally Deleted]

EIGHTEENTH:  If any beneficiary and any person upon whose death such other beneficiary shall become entitled to receive either income or principal under this Trust Indenture shall die in a common accident or disaster or under such circumstances that it is difficult or impracticable to determine who survived the other, then, for the purposes of this Trust Indenture, such beneficiary shall be deemed to have predeceased such person.

NINETEENTH: The Settlor, REISL GOLDBERGER of 90 Ross Street, Brooklyn, New York 11211 does hereby authorize ALEXANDER ASHKENAZI of 1426 57th Street, Brooklyn New York 11219 (the "Agent"), in her name, whether or not she is ill, incapacitated or injured and is unable to direct her own medical care, and even upon her death, to request, receive and review and be granted full and unlimited access to, and obtain complete unredacted copies and obtain, and to authorize any other person to request, receive and review and be granted full and unlimited access to, and obtain, complete unredacted copies of any and all of her health and medical information and/or any information and/or records as commonly defined and/or as defined in 45 CFR Section 164.501 and regulated by the Standards for Privacy of individually Identifiable Health Information found in 65 Fed. reg. 82462 as protected private records or otherwise covered under the Health Insurance Portability and Accountability Act of 1996 (HIPPA), Public law 104-191, for the purpose of obtaining or selling one or more life insurance policies on Settlor's life or collecting death benefits with respect to life insurance policies on Settlor's life.

-16-

The Settlor understands that the information contained in her health and medical records may include information relating to sexually transmitted diseases, acquired immunodeficiency syndrome (AIDS), AIDS related complex (ARC) and human immunodeficiency virus (HIV), behavioral or mental health services, treatment for alcohol and/or drug abuse and/or addiction.

The Settlor further understands that she may have access to and/or receive an accounting of the information to be used or disclosed as provided in 45CFR Section 164.524, et seq.

The Settlor further understands that any disclosure of this information carries with it the potential for an unauthorized further disclosure of this information by third parties and that such further disclosure may not be protected under HIPPA. In order to induce the disclosing party to disclose the aforesaid and/or protected confidential information, the Settlor and the Agent and the Trustees forever release and hold harmless said disclosing party who relies upon this instrument from any liability under confidentiality rules arising under HIPPA as a consequence of this disclosure.

The Settlor further authorizes and appoints the Agent to sign on Settlor's behalf and deliver any and all documents, including application forms and contracts, related to any insurance transaction that involves life insurance policies on Settlor's life, in the Agent's sole discretion.

In the event said Alexander Ashkenazi is no longer a Trustee of this trust, the then successor Trustee to such person shall be the Agent.

IN WITNESS WHEREOF, the Settlor and the Trustee have hereunto set their hands and seals all as of the day and year first above written.

_Reisl Goldberger_
REISL GOLDBERGER, Settlor

_Alexander Ashkenazi_
ALEXANDER ASHKENAZI, Trustee

-17-

SCHEDULE A

To Indenture of Trust made this 25 day of Sep/2007 ,
between REISL GOLDBERGER, as Settlor, and ALEXANDER
ASHKENAZI, as Trustee.

| INSURER | POLICY | AMOUNT | DATE |
|---------|--------|--------|------|
| REISL Goldberger | ML5583734 | 13.mil. | |

# EXHIBIT F



ROBERT B. BODZIN
*Direct* 215.496.7242.

October 30, 2014

**VIA E-MAIL (lynne.merriam@lfg.com)**

Lynne Merriam ALMI, ACS, AIAA, AIRC, ARA
Senior Complex Claim Examiner-Contestable
(Compliance Unit)
Lincoln Financial Group
100 N. Greene Street
Greensboro, NC  27401

RE:   **Policy Owner:  Reisl Goldberger Insurance Trust**
      **Your Policy No.:  ML5583743**
      **Date of Death:  October 14, 2014**

Dear Ms. Merriam:

    The undersigned represents Alexander Ashkenazi, Trustee of the Reisl Goldberger Insurance Trust.  As a follow up to my letter October 27, 2014, a copy of which is enclosed, I am enclosing an executed copy of the Reisl Goldberger Insurance Trust (Amended) dated September 25, 2007.

    Mr. Ashkenazi did not authorize the appointment of Mr. Minster as a substitute trustee and did not authorize any change of ownership of the policy.  In light of the foregoing, please confirm for me by return e-mail, no later than 10:00 a.m. on October 31, 2014, that Lincoln National Life Insurance Company will either interplead the proceeds of the Policy or will not distribute the proceeds of the Policy without at least 10 days written notice to me as counsel for Mr. Ashkenazi.  Unless we receive written assurances by that time and date, we will file an action against Lincoln National Life Insurance Company seeking a Temporary Restraining Order preventing the distribution of the proceeds.

    Please contact me if you have any questions with regard to the foregoing.

                                              Very truly yours,

                                              ROBERT B. BODZIN

RBB/mml
Enclosure

{00781848;v1 }

rbodzin@kleinbard.com    One Liberty Place, 46TH Floor
Main 215.568.2000    1650 Market Street
Fax 215.568.0140    Philadelphia, Pennsylvania 19103
www.kleinbard.com